UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK EDWARDS,

                              Plaintiff,

            -against-

GREEN HAVEN C.F. HEARING OFFICER
ERIC GUTWEIN, et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-03183 (PMH)

PHILIP M. HALPERN, United States District Judge:

Mark Edwards ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action under 42 U.S.C. § 1983 on April 5, 2021.[1] (*See* Doc. 2). Plaintiff maintains in the Amended Complaint ("AC"), the operative pleading, that two employees of the New York State Department of Corrections and Community Supervision ("DOCCS")—specifically, Hearing Officer Eric Gutwein ("Gutwein") and Correction Officer Morel ("Morel," and collectively, "Defendants")— violated his constitutional rights during his incarceration at Green Haven Correctional Facility ("Green Haven") in April 2018. (*See* Doc. 16, "AC").

Defendants filed a motion to dismiss on November 15, 2021. (Doc. 19; Doc. 20, "Def. Br."). Plaintiff opposed the motion on December 17, 2021 (Doc. 21, "Opp."), and the motion was fully briefed with the filing of Defendants' reply memorandum of law in further support of their motion on January 6, 2022 (Doc. 22, "Reply Br.").[2]

---

[1] Known as the "prison mailbox rule," an inmate's *pro se* complaint is effectively "filed" when delivered to prison officials, in light of the inherent disadvantage suffered by incarcerated *pro se* litigants in their inability to monitor the course of litigation. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *modified on other grounds*, 25 F.3d 81 (2d Cir. 1994). Plaintiff's complaint was delivered to prison officials on April 5, 2021, as indicated in the affidavit of service annexed to the pleading. (Doc. 2 at 8).

[2] Citations to the parties' filings correspond to the pagination generated by ECF.

For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

On April 2, 2018, Morel allegedly brought false charges against Plaintiff for several rule violations, including creating a disturbance and violating a direct order. (AC ¶¶ 6-8; Doc. 20-1, "Ex. A").[3] Earlier that day, when Plaintiff and thirty other incarcerated individuals were returning from lunch, Morel accused Plaintiff of screaming out "Leave him alone. He didn't do nothing!" while Morel was counseling another incarcerated individual. (AC ¶¶ 6-8; *see also* Ex. A). Morel reported that he directed Plaintiff and the other inmates to leave the area and not get involved, and though several inmates complied with his direction, Plaintiff and the rest of the inmates refused. (Ex. A). Morel therefore activated his Personal Alarm System, which resulted in an emergency response by several other correction officers. (*Id.*; AC ¶¶ 6, 8). Plaintiff claims, however, that he did not utter a single word and had nothing to do with the incident. (AC ¶ 9). Rather, Officer Morel targeted Plaintiff that day based on an incident that happened months prior. (*Id.* ¶ 8). Plaintiff alleges that when he first met Morel in the industrial workshop, he had jokingly referred to Morel as "the fake Drake," referencing Morel's resemblance to Drake, a "successful musician." (*Id.* ¶¶ 8, 20). Plaintiff alleges that in response, Morel stated, "Fuck you inmate, I'll pull the alarm and

---

[3] Defendants filed a copy of the misbehavior report lodged against Plaintiff on April 2, 2018, in connection with their motion to dismiss, albeit unsupported by affidavit as required by Local Civil Rule 7.1. The Court has discretion to overlook a failure to comply with Local Civil Rule 7.1 and exercises such discretion on this motion. *See, e.g.*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016). The Court, on a Rule 12(b)(6) motion, "is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference"). The Amended Complaint explicitly refers to the inmate misbehavior report, thereby incorporating that document by reference. *See James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020). Therefore, the misbehavior report may properly be considered on this motion.

send you to the box for nothing. Try me inmate." (*Id*.). Plaintiff alleges that the April 2, 2018 incident presented the "opportunity . . . for C.O. Morel to carry out his threat to trigger the alarm and send Plaintiff into solitary confinement despite his innocence, in retaliation for Plaintiff's joke which offended him." (*Id*. ¶ 9). Plaintiff was placed in solitary confinement with at least twenty-five other prisoners who were also in the area with Plaintiff at the time of the incident. (*Id*. ¶ 7).

On April 5, 2018, Gutwein commenced Plaintiff's disciplinary hearing based on the charges brought by Morel. (*Id*. ¶ 11). Plaintiff alleges that while waiting for the hearing to start, he overheard Gutwein refer to incarcerated individuals involved in an incident at Five Points Correction Facility as, ". . . wannabe Nat Turners trying to destroy the place . . . ." (*Id*. ¶ 12). When the hearing commenced, Plaintiff requested relevant documentation generated in connection with the incident, "i.e. Unusual Incident Reports, To/From Memos, Log-book entries etc." (*Id*.). Gutwein then adjourned the hearing for two weeks "for no good reason" and denied Plaintiff's request for documents. (*Id*. ¶ 14). When the hearing re-commenced on April 19, 2018, Morel testified and claimed that Plaintiff said during the incident, "No, I'm not going in, you guys are not fucking jumping him." (*Id*. ¶ 15). Plaintiff alleges that after Morel reviewed the misbehavior report, however, he changed his testimony to conform to the report. (*Id*.). Plaintiff further alleges that when he asked Morel if anything was said to him by Plaintiff in the hallway that day, Morel responded, "No." (*Id*.). Plaintiff therefore asked Gutwein to dismiss the report, but Gutwein "made no attempts to question Morel further" and "dismisse[d] Plaintiff out of hand." (*Id*.).

Gutwein imposed a solitary confinement sentence of 120 days. (*Id*. ¶ 17). Because the 17-day period Plaintiff was in solitary confinement while the hearing was adjourned was not counted toward the sentence, Plaintiff alleges the total sentence was in fact 137 days. (*Id*.). Gutwein also recommended six months' loss of good time credits, which according to Plaintiff is contrary to

New York State law, which only allows for the loss of one day of good time per week of the imposed sentence. (*Id*.). When Plaintiff asked Gutwein why he imposed such a sentence, Gutwein ignored him. (*Id*. ¶ 18). Plaintiff claims that Defendants colluded during the hearing to be sure Plaintiff received the most severe penalty. (*See, e.g.*, *id*. ¶¶ 10, 16). Plaintiff claims that Gutwein has "an issue against those of the darker races," "a fascist agenda of white supremacy," uses the "prison disciplinary process to make inroads on that front," and is known as a "figurative 'lynchman' for his abuse of authority." (*Id*. ¶¶ 13,16). Plaintiff further alleges that Morel has a reputation of "hating prisoners" and acting as "a chattel trader of old dealing in humans on the cheap to sadistic plantation owners of the bygone era. Handing over the innocent brown body for the inebriated of power to whip and lash with solitary confinement." (*Id*. ¶ 13).

Plaintiff claims that during his 137 days of solitary confinement, his visits were limited to one per week, which resulted in at least one visitor being turned away at the prison door. (*Id*. ¶ 19). Plaintiff further claims he was not allowed to receive religious books through the mail. (*Id*.). When Plaintiff asked prison officials why his visits were limited and he could not receive books, he was told that "Gutwein was personally responsible for the added grief." (*Id*.).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*,

618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)). Plaintiff maintains, through this mechanism, that: (1) Morel retaliated against him in violation of the First Amendment; (2) Gutwein violated his Fourteenth Amendment rights in connection with the disciplinary hearing; and (3) Defendants violated his Eighth Amendment rights based on the conditions of his confinement.

I.  <u>First Claim for Relief: First Amendment Retaliation</u>

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (alteration in original)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-03632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). As for the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff alleges that, in retaliation for his "joke"—i.e., referring to Morel as "fake Drake"—Morel made good on "his threat to trigger the alarm and send Plaintiff into solitary confinement" and brought charges against Plaintiff as set forth in the inmate misbehavior report

dated April 2, 2018. (*See* AC ¶ 8-11, 20; Ex. A). As an initial matter, Plaintiff's claim is time-barred. The statute of limitations applicable to claims under section 1983 is three years. *Kelly v. City of Mount Vernon*, No. 19-CV-11369, 2021 WL 1947777, at *3 (S.D.N.Y. May 14, 2021), *aff'd sub nom. Kelly v. City of Mount Vernon, New York*, No. 21-1308, 2022 WL 710746 (2d Cir. Mar. 10, 2022). Thus, his First Amendment retaliation claim against Morel, which accrued prior to April 5, 2018, is time-barred, as Plaintiff's complaint is deemed filed on April 5, 2021, when he delivered it to prison officials.

Even if the claim was not time-barred, it fails as a matter of law. Whether Plaintiff was joking or believed he was complimenting Morel when he called him "fake Drake" (*see* AC ¶ 20 ("referencing a highly successful musician"); Opp. at 5 ("Morel was jokingly referred to as bearing a resemblance to a super-successful and popular celebrity")) is irrelevant because Plaintiff alleged that he believes Morel retaliated against him because he *insulted* Morel (AC ¶ 9 (Morel's actions were taken "in retaliation for Plaintiff's joke which offended him")). Insults do not constitute protected speech. *Murray v. Arquitt*, No. 10-CV-01440, 2014 WL 4676569, at *20 (N.D.N.Y. Sept. 18, 2014); *Doe v. Selsky*, No. 08-CV-06199, 2013 WL 5311221, at *3 (W.D.N.Y. Sept. 20, 2013) (citing *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (finding inmate's insulting comments to a disciplinary hearing officer was not protected speech)); *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (incarcerated individual's speech, which consisted of calling a correction officer "ugly," was not protected speech). Moreover, although "[c]ircumstantial evidence of causation may exist where the adverse action occurs soon after the protected activity," *Mateo v. Fischer*, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010), Plaintiff pleads that the "fake Drake" incident occurred "months prior" to Morel's filing of the misbehavior report (AC ¶ 8).

Plaintiff's First Amendment claim is, therefore, dismissed.

II.    Second Claim for Relief: Fourteenth Amendment Due Process[4]

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive

any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV

§ 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed

a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient

process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19,

2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20,

2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL

777907, at *9 (S.D.N.Y. Feb. 18, 2020).

As to the first element, "the threshold issue is always whether the plaintiff has a property

or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510

(S.D.N.Y. 2012) (quoting *Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir. 2001)). According to

the Second Circuit, an inmate's liberty interest is implicated by prison disciplinary proceedings

only if the discipline imposes "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v.

Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). "Such discipline must be unusually onerous." *Aikens v.

Porter*, No. 16-CV-00949, 2019 WL 499993, at *4 (W.D.N.Y. Feb. 8, 2019) (citing *Jenkins v.

Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)). "Factors relevant to this determination include 'the

extent to which the conditions of the disciplinary segregation differ from other routine prison

---

[4] Although the Amended Complaint alleges that Gutwein violated Plaintiff's rights under the Fifth
Amendment (AC at 4), this claim is properly brought under the Fourteenth Amendment, as Plaintiff was in
state custody during the entire incident. *Wilson v. Calderon*, No. 14-CV-06209, 2017 WL 2881153, at *6
n.7 (S.D.N.Y. July 6, 2017) (differentiating between a person held in federal custody, which is properly
brought under the Fifth Amendment, and a person held in state custody, properly brought under the
Fourteenth Amendment), *adopted by* 2017 WL 3209148 (S.D.N.Y. July 27, 2017).

conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Colon v. Annucci*, 344 F. Supp. 3d 612, 632 (S.D.N.Y. 2018) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). "[T]here can be no 'violation' of procedural due process requirements unless the confinement meets the atypicality standard of *Sandin*." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

In this case, Plaintiff's solitary confinement lasted approximately 137 days, so his complaint falls within the "intermediate" tier of analysis (i.e., segregation lasting between 101 and 305 days). *See Brown v. Venettozzi*, No. 18-CV-02628, 2019 WL 4194432, at *4 (S.D.N.Y. Sept. 4, 2019). In such cases, the length of duration in segregated housing, by itself, is insufficient to state a claim and "development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 65 (internal quotation marks omitted). This reality does not, however, excuse Plaintiff from pleading facts regarding the conditions of his solitary confinement and automatically open the doors to discovery; a viable claim still requires some explanation as to how the placement imposed "atypical and significant hardships." *See, e.g.*, *Venettozzi*, 2019 WL 4194432, at *5 (dismissing claim connected to 210-day confinement because, *inter alia*, plaintiff's allegations did not "involv[e] 'more onerous' or 'atypical' conditions of confinement"); *Falls v. Campbell*, No. 17-CV-00035, 2019 WL 1255768, at *10 (S.D.N.Y. Mar. 19, 2019) (dismissing claim involving 150 days in "keeplock" because the plaintiff "asserted *no* facts whatsoever that would allow the Court to assess whether" he experienced "a significant and atypical hardship" (emphasis in original)); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606-07 (S.D.N.Y. 2009) (dismissing claim regarding 280-day confinement because the plaintiff "failed to make any allegations detailing the conditions of his confinement").

10

Neither the Amended Complaint nor Plaintiff's opposition offer any allegations even suggesting that he experienced the conditions envisioned by *Sandin* and its progeny. (*See generally* AC; Opp.). Plaintiff alleges that he was permitted only one visitor per week and was not allowed to receive religious books through the mail. (AC ¶ 19). Limited visitors and books, however, are normal conditions of solitary confinement and, therefore, do not rise to a liberty interest violation. *See Brown*, 2019 WL 4194432, at *5; *see also Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *7 (S.D.N.Y. Feb. 17, 2021); *Frazier v. Coughlin*, 81 F.3d 313, 315, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); *Nogueras v. Coughlin*, No. 94-CV-04094, 1996 WL 487951, at *5 (S.D.N.Y. Aug. 27, 1996) ("Restrictions on telephone use, recreational activities, access to law libraries, visitation, personal property, educational and employment opportunities" did not amount to atypical hardship). Plaintiff's allegation that Gutwein's recommendation of six months' loss of good time credits likewise does not rise to a liberty interest violation. (*Id*. ¶ 17; Opp. at 6). While incarcerated individuals "have a liberty interest in good time credit they have already earned," *see Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000), Plaintiff does not allege that he actually lost good time credit or that he had, in fact, earned any good time credit to lose. In short, Plaintiff has not plausibly alleged that he possessed a liberty interest sufficient to state a claim against Gutwein for a Fourteenth Amendment violation and the claim must therefore be dismissed.

In any event, Plaintiff's allegations establish that he received all the process that was due. As regards disciplinary hearings, an inmate should receive: "(1) advance written notice of the charges against him to enable him to marshal the facts and prepare a defense; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a short written

statement presenting the reasons and evidence supporting any disciplinary action ultimately taken." *Amaker v. Coombe*, No. 96-CV-01622, 2002 WL 523388, at *9 (S.D.N.Y. Mar. 29, 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also* <u>*Jackson v. Annucci*</u>, No. 20-CV-02008, 2021 WL 2581340, at *10 (S.D.N.Y. June 23, 2021) (finding that Gutwein afforded inmate due process at disciplinary hearing where there was "certainly 'some evidence'" to support guilty determination).

Plaintiff alleges that he was denied due process at the disciplinary hearing because he was denied documents and Gutwein was a biased hearing officer. An "inmate facing disciplinary proceedings should be allowed to . . . present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. The right to present documents "can be denied on the basis of irrelevance or lack of necessity." *Richardson v. Williams*, No. 15-CV-04117, 2017 WL 4286650, at *9 (S.D.N.Y. Sept. 26, 2017). The plaintiff "must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Jackson v. Prack*, No. 16-CV-07561, 2019 WL 6119010, at *7 (S.D.N.Y. Nov. 18, 2019). Plaintiff does not identify the substance of the documents requested, whether the documents exist, how they were relevant to the defense, or how the denial of such documents prejudiced him. Absent any facts regarding how he was prejudiced, Plaintiff has not plausibly alleged a due process violation with respect to the requested documents.

As regards Plaintiff's assertion that Gutwein was a biased hearing officer, a basic requirement of due process is an unbiased adjudicator, who does not prejudge the evidence, and does not evaluate evidence that he has not seen. *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d

Cir. 1990). Plaintiff's allegations that Gutwein has "an issue against those of the darker races," "a fascist agenda of white supremacy," uses the "prison disciplinary process to make inroads on that front," and is known as a "figurative 'lynchman' for his abuse of authority," however, are wholly conclusory. (AC ¶¶ 13, 16). "Claims of hearing officer bias are common in Section 1983 cases by inmate plaintiffs, and when they are based on purely conclusory allegations, they are routinely dismissed." *Richardson v. Williams*, No. 15-CV-04117, 2017 WL 4286650, at *10 (S.D.N.Y. Sept. 26, 2017); *Washington*, 968 F. Supp. 2d at 541. Plaintiff's allegation that Gutwein referred to other inmates in a different facility as "wannabe Nat Turners trying to destroy the place" (AC ¶ 12), speaking loudly enough for Plaintiff to hear (Opp. at 3), likewise does not support the contention that Gutwein was biased or that his decision-making ability was affected in Plaintiff's hearing. Moreover, that Gutwein did not dismiss the charges against Plaintiff following Morel's allegedly inconsistent testimony does not rise to a due process violation. Beyond his conclusory allegations about Morel's testimony, Plaintiff does not identify any actions during the disciplinary hearing reflecting Gutwein's alleged bias and/or partiality. *See Madison v. Grecco*, No. 08-CV-01125, 2010 WL 935582, at *5 (N.D.N.Y. Feb. 19, 2010).

Accordingly, Plaintiff's Fourteenth Amendment claim is dismissed.

III.   <u>Third Claim for Relief: Eighth Amendment Conditions of Confinement</u>

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care, and . . . tak[ing] reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks

omitted). To state a claim for relief where, as here, liability is based on a theory that "the conditions of . . . confinement constitute[d] cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Under the first step of the analysis, conditions of confinement are objectively serious if the plaintiff can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This assessment is not "static," as "[t]he conditions themselves must be evaluated in light of contemporary standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995). At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was "deprived of [his] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety" or was "exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks omitted). As for the second step of the analysis, the subjective element, a defendant:

> cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (quoting *Farmer*, 511 U.S. at 837); *see also Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir. 2019) (noting that a plaintiff "must demonstrate that, subjectively, prison staff acted with deliberate indifference . . . in failing to address the purported danger" (internal quotation marks omitted)).

Of course, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Plaintiff does not make any allegation of Morel's personal involvement in Plaintiff's conditions of confinement. The claim must, consequently, be dismissed as alleged against him.

Plaintiff's allegations concerning the conditions of his confinement are the same allegations he pled in support of his Fourteenth Amendment claim. Specifically, Plaintiff alleges that during his 137 days in solitary confinement, he was limited to one visitor per week and was not able to receive books. (AC ¶ 19). Plaintiff adds, by way of his memorandum of law in opposition, that inmates in solitary confinement are restricted to a cell for 23 hours per day, permitted three brief showers per week, lose direct access to the mailbox, permitted one hour of limited exercise, and lose phone, packages, and commissary privileges. (Opp. at 10). These conditions are not in themselves "sufficiently serious to provide a basis for an Eighth Amendment claim." *Rivera v. Senkowski*, 62 F.3d 80, 85 (2d Cir. 1995); *Cruz v. Jackson*, No. 94-CV-02600, 1997 WL 45348, at *6-7 (S.D.N.Y. Feb. 5, 1997); *see also Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004) ("[O]rdinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week.").

Because the Complaint fails to satisfy the objective prong, the Court need not, and does not, reach the question of whether Plaintiff's allegations are sufficient to satisfy the subjective prong.

Accordingly, Plaintiff's Eighth Amendment claim is dismissed.

IV.    <u>Failure to State a Conspiracy Claim</u>

Plaintiff alleges that the purported retaliation, due process violations, and conditions of confinement were a conspiracy between Defendants. To survive a motion to dismiss, the claim must allege facts plausibly suggesting that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Concepcion v. City of New York*, No. 05-CV-08501, 2008 WL 2020363, at *5 (S.D.N.Y. May 7, 2008) (affirming the continued viability of the *Ciambriello* standard when analyzing a conspiracy claim vis-à-vis a motion to dismiss). The plaintiff must not only allege a conspiracy, but he must also allege the "actual deprivation of constitutional rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin*, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Id.*; *see also Vega v. Artus*, 610 F. Supp. 2d 185, 202-03 (N.D.N.Y. 2009).

As discussed *supra*, Plaintiff has failed to plausibly allege a violation of his First, Eighth, or Fourteenth Amendment rights. Thus, any conspiracy claims alleged by Plaintiff in connection with the dismissed constitutional claims are likewise dismissed. *Romer*, 119 F. Supp. 2d at 363-64.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In this case, the Complaint is dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 19, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.


**SO ORDERED:**

Dated:    White Plains, New York
          April 7, 2022

_____
PHILIP M. HALPERN
United States District Judge

17